**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT W. MAUTHE, M.D., P.C.,** individually and on behalf of all others similarly situated, | |
| Plaintiff, | **Civil Action No. 18-1901** |
| v. | **Hon. Edward G. Smith** |
| **MCMC, LLC,** | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR ORDER**
**PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND**
**DIRECTING NOTICE TO SETTLEMENT CLASS**

Plaintiff, Robert W. Mauthe, M.D., P.C. ("Plaintiff"), on behalf of itself and a proposed settlement class of similarly-situated persons (identified herein as the "Settlement Class"), respectfully requests that the Court preliminarily approve the Parties' proposed class action settlement (Exhibit A) and, in support thereof, states as follows:

In a settlement conference with the Hon. Elizabeth T. Hay, the parties reached the instant settlement. Under the settlement, Defendants will make available a $900,000 Settlement Fund, which will be used to pay class member claims, the cost of administering the settlement, a service award for the Plaintiff, and attorney's fees and expenses. As the Court is aware, this settlement was reached with Plaintiff's contested motion for class certification pending and after the Court denied two

summary judgment motions by Defendants but acknowledged that Defendants could prevail at trial. As such, Plaintiff believes the settlement is a substantial recovery for the class in a case where there is a great amount of risk and should be approved.

WHEREFORE, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff hereby moves for preliminary approval of the parties' settlement and an order directing notice to the Settlement Class. Plaintiff submits a memorandum in support.

Dated: January 18, 2023

Respectfully submitted,

Robert W. Mauthe, M.D. P.C., individually and as the representative of a class of similarly-situated persons,

By:  /s/ David M. Oppenheim

Phillip A. Bock (*pro hac vice*)
David M. Oppenheim (*pro hac vice*)
BOCK HATCH & OPPENHEIM, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
(312) 658-5500
(312) 658-5555 (fax)

Richard E. Shenkan (PA 79800)
SHENKAN INJURY LAWYERS, LLC
P.O. Box 7255
New Castle, PA 16107
(248) 562-1320
(888) 769-1774 (fax)
rshenkan@shenkanlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed on January 18, 2023, using the Court's electronic filing system, which will serve a copy on all counsel of record.

/s/ David M. Oppenheim

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT W. MAUTHE, M.D., P.C.,** individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>**MCMC, LLC,**<br><br>          Defendant. | **Civil Action No. 18-1901**<br><br>**Hon. Edward G. Smith** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS UNOPPOSED
MOTION FOR ORDER PRELIMINARILY APPROVING CLASS ACTION
SETTLEMENT AND DIRECTING NOTICE TO SETTLEMENT CLASS**

Plaintiff, Robert W. Mauthe, M.D., P.C. ("Plaintiff"), on behalf of itself and a proposed settlement class of similarly-situated persons (identified herein as the "Settlement Class"), submits this memorandum in support of its motion for preliminary approval.

## I.      Background of the litigation.

Plaintiff's Class Action Complaint alleges that defendant MCMC, LLC ("Defendant") sent unsolicited advertisements by facsimile to Plaintiff and a class of others in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

Discovery showed that Defendant sent notices of continuing medical education seminars by fax to various medical professionals between December 2016 and 2017;

specifically, four such faxes to Plaintiff and all the other doctors in its network. Each fax broadcast consisted of a cover page identifying Defendant as the sender and a second page advertising seminars offered by the "International Academy of Independent Medical Evaluators" ("IAIME"). The contents of the faxes were uniform and sent to all doctors in Defendant's network regardless of location. The faxes contained no opt-out notice.

The first fax advertised an IAIME event in Austin, Texas in January 2017. It also stated, "MCMC is a proud sponsor of the International Academy of Independent Medical Evaluators," and "Visit the MCMC Exhibit Booth." The second advertised a June 2017 IAIME event in Rosemont, Illinois. It also stated at the top, "MCMC PARTNERS WITH IAIME ON CME EDUCATION!" The third fax advertised an IAIME course entitled, "IAIME's Pass the Texas DD Exam Prep Course" to be held in Dallas, Texas in August 2017. The fourth advertised an IAIME event in Championsgate, Florida in January 2018. It also stated, "Be sure to Visit Laura at the MCMC Booth !!!" All of these events and courses required payment for attendance.

Defendant produced fax transmission logs/data that showed the four faxes were successfully sent a total of 9,799 times to 4,183 different fax numbers. The parties have agreed on a settlement class limited to particular targets of those fax broadcasts. The settlement class includes all intended fax recipients (1) whose fax number (at which they received the fax) was not contained within IAIME's databases and (2) who were not among those whom Defendant's employee responsible for

contact with doctors testified affirmatively requested specific information about CME courses.

The record already reflects that Plaintiff conducted significant class certification discovery in this matter. Regarding the fax transmissions included in the settlement, discovery both revealed the facsimiles successfully sent on Defendant's behalf and identified the recipients of those faxes. According to the transmission logs, the settlement class consists of 3,465 doctors who received a total of 8,188 faxes and the proposed settlement will resolve all claims about those 8,188 fax transmissions.

Although "junk fax" class actions might appear relatively simple—*i.e.,* the issue of whether a defendant sent an unsolicited advertisement in bulk and by fax may not seem complex—TCPA class action jurisprudence generally, and the issues in this case specifically, shows otherwise. Absent settlement, this case does not necessarily result in Plaintiff winning class certification over Defendant's opposition, a merits judgment for the class, trebled damages, success on appeal, and collection from Defendant. Even if it did, there would be significant delay until payment, and even then a distribution process that might require declarations or other proofs from class members seeking their share of the recovery. The proposed settlement avoids these risks and the continued delay of payment by allowing class members to submit a simple, one-page claim form to claim their share of the Settlement Fund without requiring any knowledge or proof about their receipt of facsimiles sent in 2016 and 2017.

This case has been hard fought and required skilled and specialized lawyering. During the litigation, this Court and the parties tackled some complex issues. Defendant twice moved for summary judgment, arguing that various connections between Plaintiff and Defendant meant that the faxes were not unsolicited. Defendant made similar arguments as applied to the other recipients in opposition to class certification. In addition, Defendant argued that individual inquiries into the technology used by each fax recipient would be necessary in order to establish that each received faxes as defined by the TCPA.

Armed with information acquired through the adversarial process and understanding the potential strengths and weaknesses of their respective positions, the Parties engaged in arm's-length settlement negotiations, including a settlement conference with the Hon. Elizabeth T. Hay. The Parties agreed to the terms of a proposed settlement under which Defendant will make $900,000 available to resolve all claims about the faxes sent to the Settlement Class in December 2016, April 2017, July 2017, or December 2017. As is customary, the parties have drafted a proposed notice to send the class members and drafted proposed preliminary and final Orders for the Court. These are exhibits to the attached written settlement agreement.

For these reasons and as discussed herein, Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class, preliminarily approve the proposed settlement, Order the parties to notify the Settlement Class as proposed, and schedule a date for a final approval hearing at which the proponents and any opponents of the settlement may be heard.

II.    **Summary of the settlement.**

If approved by the Court after notice to the Settlement Class, the parties' settlement agreement will resolve this action and the controversy about the facsimiles sent by or on behalf of Defendant in December 2016, April 2017, July 2017, or December 2017. The above dates are the "Class Period." The Settlement Agreement's primary terms are as follows:

a.    <u>Certification of the "Settlement Class."</u> The Parties have stipulated to certification of a Rule 23 (b) (3) settlement class defined as:

> All persons to whom faxes from MCMC were successfully sent in December 2016, April 2017, July 2017, or December 2017, soliciting paid attendance at IAIME events, except those persons faxed at a telephone number appearing in the IAIME databases or in MCMC's list of facsimile numbers to which persons invited MCMC to send facsimiles about meetings offering continuing medical education credits.

The Settlement Class excludes: (1) Defendant, any parent, subsidiary, affiliate, or controlled person of either Defendant, as well as their attorneys, officers, directors, agents, servants, or employees, and the immediate family members of such persons; (2) the named counsel in the Action and employees of their offices or firms; and (3) the judge(s) assigned to the Action and his or her staff. *See* Agreement, <u>Exhibit A</u>, at ¶ 2.

b.    <u>The Class Representative and Class Counsel.</u> The parties have agreed that Plaintiff is the "Class Representative" and that Plaintiff's attorneys Phillip A. Bock of Bock Hatch & Oppenheim, LLC and Richard J. Shenkan of Shenkan Injury Lawyers, LLC are "Class Counsel" for the Settlement Class. *Id*. at ¶ 4.

c.    <u>The Settlement Fund</u>. Defendant have agreed to make available $900,000 (the "Settlement Fund") to pay class member claims, to pay an incentive payment to the Class Representative, and to pay attorneys' fees and expenses to Class Counsel (including the costs of notice and settlement administration). Defendant will keep any portion of the Settlement Fund that is not paid pursuant to the Settlement Agreement to claiming class members, to the Class Representative, to the Settlement Adminstrator and to Class Counsel. *Id*., ¶ 6.

d.    <u>Class Notice</u>. The parties have agreed to notify the Settlement Class about the settlement by sending a notice both by U.S. Mail and by facsimile to the persons associated with the fax numbers on the transmission logs, and will also make the notice and claim form available with other documents from this case on the Settlement Administrator's website. The notice includes instructions about submitting a claim form to the Settlement Administrator by fax, mail, or electronically, and about opting out or objecting to the settlement, and includes a direct dial telephone number for people to call Class Counsel with questions. *Id*., ¶¶ 8, 11-12 and Exhibit 2 thereto.

e.    <u>Claims</u>.

(i)    <u>The claim form</u>. To claim a cash payment from the Settlement Fund, a person must identify himself/herself/itself as the owner/holder/user of one or more of the involved fax numbers on the dates the faxes were sent. The class notice attaches the simple, one-page

6

claim form required for submitting such claims for payment. The claim form is the fifth page of the Notice (Exhibit 2 to the Settlement Agreement). On the claim form a person must affirm that one or more fax numbers from Defendant' target lists was that person's fax number when the faxes at issue were sent, but need not remember or possess any faxes they received.

Each person submitting a timely and valid Claim Form will be mailed a payment of $150 for each of the faxes at issue successfully sent to their fax number(s), subject to a *pro rata* reduction only in the event the entire Settlement Fund is claimed. In the event that less than 15% ($135,000.00) of the Settlement Fund is claimed by members of the Settlement Class at $150.00 per fax claimed, the per fax payment shall be increased such that total claims payments equals 15% of the Settlement Fund.

Again, the claimant need not possess any copy of any fax from Defendant, need not remember receiving any fax from Defendant, and need not know anything about Defendant. Rather, the claimant must merely identify himself/herself/itself as a member of the Settlement Class by verifying ownership or use of one or more targeted fax numbers on at least one of the relevant dates. *Id.*, ¶ 14 and Exhibit 2 thereto.

(ii)    The Settlement Administrator. Subject to the Court's approval, a company named Class-settlement.com will be the

"Settlement Administrator," and will issue the class notice, maintain the settlement website, assist class members upon request in completing and submitting forms, receive the claim forms, provide a list of approved and rejected claims to counsel for the Parties, and issue the payments to approved claims. Class-settlement.com is an experienced, independent class action settlement administrator. The Settlement Administrator shall be paid from the Settlement Fund. *Id.*, ¶¶ 7, 10.

f.     <u>Class member rights to request exclusion from the Settlement Class or object to the settlement</u>. Any member of the Settlement Class may seek to be excluded from the Agreement and the settlement by requesting exclusion (also known as "opting out") within the time period set by the Court. The Parties propose a period of 60 days after the Settlement Administrator issues the class notice. Any member who opts out of the class during that 60-day period will not be bound by any prior Court Order in the case or the terms of the Agreement but also shall not be entitled to any of the monetary benefits set forth in the Agreement. Alternatively, a class member can stay in the Settlement Class and object to all or any of the settlement terms within the time period set by the Court, if they choose to do so. As with exclusion requests, the Parties suggest that class members be permitted to object within 60 days after the Settlement Administrator issues the class notice. *Id.*, ¶ 13.

g.     <u>Release of claims</u>. If the Court finally approves the proposed settlement after notice, the Settlement Class will release all claims that were

brought or which could have been brought against Defendant and the other released parties about the specific faxes described in the class definition. *Id.*, ¶ 21.

        h.    <u>Attorney's fees and expenses to Class Counsel and the Class Representative service award</u>. At the final approval hearing, as indicated in the class notice, Class Counsel will apply to the Court to approve an award to Class Counsel of attorney's fees equal to one-third of the Settlement Fund ($300,000), plus reasonable out-of-pocket expenses not to exceed $25,000. Class Counsel will also ask the Court to approve an award of $15,000 to Plaintiff from the Settlement Fund for serving as the Class Representative. *Id.*, ¶ 17. Defendant have agreed not to object to these requests and to pay the amounts awarded from the Settlement Fund. *Id.*

## III.   **Plaintiff requests that the Court preliminarily approve the settlement.**

"The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors*, 55 F.3d 768, 784 (3d Cir. 1995); see also NEWBERG ON CLASS ACTIONS § 11.41 (Fourth) (2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). There is a "strong presumption in favor of voluntary settlement agreements." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (*citing Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010)). "This presumption is especially strong in class actions and other complex cases ... because they promote the amicable resolution

of disputes and lighten the increasing load of litigation faced by the federal courts." *Id*. Under Rule 23(e), approval of a class settlement is appropriate if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (2).

Judicial review of a proposed class settlement generally requires two hearings: a preliminary approval hearing and a final "fairness" hearing. *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 439 (E.D. Pa. 2008); *In re American Investors Life Ins. Co. Annuity Marketing and Sales Practices Litigation*, 263 F.R.D. 226 (E.D. Pa. 2009). The preliminary approval decision is not a commitment to approve the settlement; rather, it is a determination that "there are no obvious deficiencies and the settlement falls within the range of reason," warranting notice to the absent class members. *Id.*, citing *Smith v. Professional Billing & Management Services, Inc.,* 2007 WL 4191749, at *1 (D.N.J.2007) (*citing In re Nasdaq Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y.1997); *Manual for Complex Litigation,* § 21.632 (4th ed.2006)).

"Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Id. See* MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (West 1995)) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"); *In re Nasdaq Mkt. Makers Antitrust Litig.*, 176 F.R.D. at 102 (quoting Manual for Complex Litigation, Third, § 30.41 (West 1995)) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or

segments of the class and falls within the range of possible approval, preliminary approval is granted."). Once the Court preliminarily approves a settlement, notice of the proposed settlement and the fairness hearing is provided to class members. Class members may formally object to the proposed settlement and may appear at the final approval hearing.

The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Linerboard Antitrust Litigation,* 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (*citing In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 785-86 (3d Cir. 1995)); *see also In re Cendant Corp. Litigation,* 264 F.3d 201, 233 n.18 (3d Cir. 2001). If, after consideration of those factors, a court concludes that the settlement should be preliminarily approved, "... an initial presumption of fairness ..." is established. *In re Linerboard,* 292 F. Supp. 2d at 638 (*citing In re Gen. Motors Corp.,* 55 F.3d at 785).

New Federal Rule 23 (e) (2), which went into effect December 1, 2018, requires that: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Here, the settlement satisfies all of these factors.

Plaintiff's attorneys are experienced in TCPA and class action matters, and believe this settlement is fair, reasonable, and adequate.[1] They negotiated the settlement only after significant discovery and merits briefing, and after considering the legal and factual issues remaining in the case, the risks and expenses involved in pursuing the lawsuit to conclusion, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. The settlement is fair, reasonable, and adequate because:

a.    The Settlement provides substantial cash relief to the Settlement Class. At least $549,525 of the $900,000 million fund is available to be claimed by class members, and at least $135,000 is guaranteed to be. Each claimant will be entitled to $150 per TCPA violation and that amount would only be prorated down if claims are submitted for more than 45.1% (3,664) of the faxes in the Settlement Class.

b.    Whether Plaintiff provided prior express permission or invitation under the Third Circuit's jurisprudence might be a close call. Defendant has argued that the Court would ultimately find that Plaintiff consented because

---

[1]    Plaintiff's attorneys have litigated TCPA class actions since 2003. Courts have appointed them as lead class counsel in many TCPA cases, in addition to other types of class actions. Additionally, Plaintiff's counsel have successfully negotiated numerous class-wide settlements in TCPA cases. *See* Firm Resume, attached as Exhibit B.

he worked with Defendant and provided its fax number to Defendant in the context of performing independent medical examinations for patients referred by Defendant or alternatively because Plaintiff's principal was in IAIME's database (albeit at a different fax number). In denying Defendant's Second Motion for Summary Judgment, the Court nonetheless opined that there was persuasive evidence of consent to receive the subject facsimiles.

c.    Defendant has likewise argued that consent issues regarding the remaining class members preclude class certification, even if the persons excluded from the Settlement Class were to be excluded.

d.    Defendant has also argued that faxes received by online e-fax services on behalf of those services' clients and then sent as e-mails to the clients are not actionable under the TCPA, and that determining which, if any, of the faxes at issue here fall within that category would be impossible. The Sixth Circuit has rejected this argument, *see Brian Lyngaas, D.D.S. v. Curaden AG*, 992 F.3d 412, 425-27 (6th Cir. Mar. 24, 2021), and the Third Circuit has approved an affidavit process to determine missing information in a TCPA case, *see City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.*, 867 F.3d 434, 441-42 (3d Cir. 2017), but Plaintiff is cognizant of Defendant's arguments.

e.    There was little evidence to support a potential treble damage award available for willful violations of the TCPA. Defendant believed the faxes were not advertisements, and this Court initially agreed with them.

The settlement resulted from a full afternoon settlement conference with the magistrate judge and months of follow-up negotiations. When a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair. *Bernhard v. TD Bank, N.A.*, Case No. 08-4392, 2009 WL 3233541 at *1 (D. N.J. Oct. 5, 2009). Here, the Parties' agreement resulted from extended, arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this case, and with the assistance of an independent, professional mediator.

Class action litigation is time consuming in terms of both pretrial and trial work. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no exception. Defendant denied liability and agreed to settle only to avoid the distraction and expense of defending protracted litigation and exposure to higher liability. There are risks attendant to further litigation in this matter, and substantial delay and expense. The decision to settle is reasonable considering the risks of continued litigation. This was a hard-fought case with clear indication that the remaining litigation would remain contentious. Then, the Parties would likely litigate one or more appeals after the litigation in the district court level concluded. In addition to the risk of losing, continued litigation would delay the class members' receipt of any recovery.

The TCPA gives private citizens a right to sue to (1) enjoin future transmissions, (2) recover the greater of actual monetary damages or $500 in damages for each junk fax, or (3) obtain an injunction plus damages. If a court finds that the sender willfully or knowingly violated the TCPA, it may increase the award up to three times. Here, each class member who does not opt-out and who submits a timely and valid claim form will be mailed a check for $150 for each of the faxes included in the settlement it was successfully sent according to the records produced in the case, subject to possible reduction if the claims rate is higher than 45.1% (and a possible increase if it is lower than 11%).

Based upon the foregoing, and the judgment of experienced class counsel, Plaintiff requests that the Court preliminarily approve the settlement.

## IV.    The Court should approve notice to the Settlement Class.

The parties propose to issue notice to the Settlement Class by both U.S. Mail and by facsimile. Additionally, both the Notice and Claim Form will be available on the Settlement Administrator's website. A copy of the proposed notice is attached as Exhibit 1 to the Agreement.

Under federal law, notice of the settlement must satisfy due process. *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983); *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983). The Court is vested with wide discretion both as to the way notice is given and its content. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Rule 23 (e) (i) (B) requires that notice of a settlement be provided "in a reasonable manner."

Here, the parties have agreed to a reasonable manner of notice by sending it to the facsimile numbers targeted by the faxes at issue and also to the mailing address in Defendant' records for those fax numbers. The simple, one-page claim form will be delivered with the notice, so that members of the Settlement Class may complete and submit a claim form by fax, mail, or electronic upload to the Settlement Administrator. The notice and the claim form were written with the goals of clarity and encouraging legitimate claims by class members without undue burden.

The contents of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the notice satisfies these requirements.

The notice meets the legal standards for appropriate notice and satisfies Rule 23 (e). Therefore, Plaintiff respectfully requests that the Court approve the proposed notice and order its dissemination to the Class by U.S. Mail and electronic mail.

**V.    At final approval, after notice to the Settlement Class and their opportunity to object, Class Counsel will ask the Court to approve Defendant's agreement to pay Class Counsel attorney fees equal to one third of the Settlement Fund, to reimburse Class Counsel's out-of-pocket expenses up to a cap, and request that the Court award Plaintiff a service award for serving as the Class Representative.**

The attorneys who create a benefit for class members are entitled to compensation for their services. The Third Circuit has explained that "[t]he

percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283, 312 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999). It is well recognized that the attorneys' contingent risk is an important factor in determining the fee award. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994).

In *Boeing Co. v. Van Gemert,* 444 U.S. 472, 480 (1980), the Supreme Court stated that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." "[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing*, 444 U.S. at 479. *See Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed. Appx. 880, 883-84 (3d Cir. 2016).

The fee award is based upon the entire fund available to be claimed, even when the entire fund is not claimed by class members and the unclaimed remainder reverts to the defendant. *Id. See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made

available, whether claimed or not."). *See also* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002) (*Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

Here, Class Counsel's request for one-third of the Settlement Fund is within the market rate for TCPA cases. *See, e.g., Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, No. 18-cv-1902 (E.D. Pa. Apr. 21, 2022) (Doc. 85) (awarding one third of fund); *Robert W. Mauthe, M.D., P.C. v. ITG, Inc.*, No. 18-cv-1968 (E.D. Pa. Dec. 21, 2021) (Doc. 138) (same); *Steven A. Conner DPM, P.C. v. Optum360, LLC*, Case No. 17-cv-1642 (E.D. Pa. Nov. 25, 2019) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *City Select Auto Sales, Inc. v. BMW Bank of North America*, *Inc.*, Case No. 13-cv-4595 (D. N.J. Jan. 7, 2020) (Doc. 171) (same); *Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, Case No. 09-cv-1572 (W.D. Pa. Oct. 9, 2019) (Doc. 149) (same); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Case No. 11 CV 11, 2015 WL 12866997 (D. N.J. Jan. 26, 2015) (same); *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Battani, J.) (Doc. 120) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Van Sweden, Inc. v. 101 VT, Inc.*,

Case No. 10-cv-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Tarnow, J.) (Doc. 90) (same); *Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (Doc. 243) (same); *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, Case No. 10-cv-331 (E.D. Wis. July 19, 2013) (Doc. 59) (35% of fund); *Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) (Doc. 31) (one third of fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Doc. 146) (same); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Doc. 100) (same).

Class Counsel undertook this case on a contingency basis and achieved an excellent result in a fair and efficient manner. Obviously, the purpose of a class action lawsuit is to provide a benefit to class members, not to litigate for the sake of litigating. Class Counsel delivered significant benefits to the Settlement Class in the face of numerous potentially fatal obstacles. Tested by the potential infirmities of the case itself, there is little doubt that Class Counsel undertook a significant risk here and the fee award should reflect that risk. Class Counsel faced a significant risk of nonpayment, not only for their time but also for their out-of-pocket expenses.

The Class Notice informs the Settlement Class about the agreed and requested attorneys' fees and expenses, so that if any class member wishes to object, he/she/it can do so. Otherwise, if the Court finds that the settlement is fair, reasonable, and

adequate, then Class Counsel will ask the Court to approve the payment of fees to Class Counsel in an amount equal to one-third of the Settlement Fund plus out of pocket litigation expenses.

At final approval, Class Counsel will also request that the Court approve Defendant' payment of $15,000 from the Settlement Fund to Plaintiff for serving as the Class Representative. Such awards are appropriate to reward the person who has pursued claims on behalf of an entire class. *Brady v. Air Line Pilots Ass'n*, 627 Fed. Appx. 142, 145 (3d Cir. 2015); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 479-80 (D. N.J. 2008) (approving $60,000 incentive award and citing cases). "In deciding whether such an award is warranted, relevant factors include the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the Plaintiff expended in pursuing the litigation." *See Cook v. Niedert, et al.*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Plaintiff was a catalyst for the Settlement Class's recovery. Plaintiff filed and pursued the action. Plaintiff responded to discovery, submitted its witness for deposition, and stayed involved and informed. Its effort greatly benefited the Settlement Class.

Other courts have approved similar awards in TCPA cases. *See, e.g., Spreemo* ($15,000); *ITG* (same); *City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.*, Case No. 13-cv-4595 (D. N.J. Jan. 7, 2020) (Doc. 171) (same); *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Doc. 120)

(same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Doc. 90) (same); *Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (Doc. 243) (same).

## VI.   The Parties request that the Court schedule a final fairness hearing.

Finally, the Parties requests that the Court schedule a hearing at which the proponents and any opponents of the settlement may be heard, before the Court determines whether it will finally approve the agreement. The Proposed Final Approval Order is attached to the Agreement as Exhibit 3.

## VII.   Conclusion.

WHEREFORE, Plaintiff respectfully requests that the Court enter a Preliminary Approval Order in the form attached as Exhibit 1 to the Agreement, granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Agreement), and setting dates for opt-outs, objections, and a final approval hearing.

Dated: January 18, 2023

Respectfully submitted,

Robert W. Mauthe, M.D. P.C., individually and as the representative of a class of similarly-situated persons,

By:    /s/ David M. Oppenheim

Phillip A. Bock (*pro hac vice*)
David M. Oppenheim (*pro hac vice*)
BOCK HATCH & OPPENHEIM, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
(312) 658-5500
(312) 658-5555 (fax)

Attorneys for Plaintiff

Richard E. Shenkan (PA 79800)
SHENKAN INJURY LAWYERS, LLC
P.O. Box 7255
New Castle, PA 16107
(248) 562-1320
(888) 769-1774 (fax)
rshenkan@shenkanlaw.com

## <u>CERTIFICATE OF E-FILING AND SERVICE</u>

 I hereby certify that on January 18, 2023, I electronically filed the foregoing using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

<u>/s/ David M. Oppenheim</u>